UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RONALD HARDING )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CIANBRO CORPORATION )<br>)<br>Defendant. ) | CV-04-158-B-W |

## ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION

Because Mr. Harding has been uncompensated during the hiatus between the date of the jury verdict and the date he returned to work at Cianbro Corporation (Cianbro), the Court orders an additional lost wage award pro-rated to fill this gap.

## I. STATEMENT OF FACTS[1]

On August 22, 2006, a jury returned a verdict against Cianbro finding that Cianbro terminated Mr. Harding on September 9, 2002 because of his disability. The jury award included $563,000 in back pay damages. *Jury Verdict* (Docket # 149). On September 7, 2006, Mr. Harding moved for equitable relief, requesting either front pay or reinstatement.[2] *Pl.'s Mot. for Equitable Relief* (Docket # 154). On January 11, 2007, the Court ordered Mr. Harding reinstated; the following day, judgment was entered. *Order* (Docket # 186); *Judgment* (Docket # 187). Mr. Harding returned to work on February 20, 2007.[3] *Def.'s*

---

[1] The Court previously described the facts of this case at length. *See Harding v. Cianbro*, 473 F. Supp. 2d 89 (D. Me. 2007). In this Order, the Court recounts only those facts relevant to the immediate motion.
[2] Mr. Harding's motion, Cianbro's response on September 15, 2006, and Mr. Harding's reply on September 22, 2006, were all re-filed on October 3, 2006. (Docket # 171, 173, 175).
[3] In his motion for reconsideration, filed on January 29, 2007, before his February 20, 2007 return to work, Mr. Harding requested ongoing damages until his reinstatement. *Pl.'s Mot. for Limited Recons.* at 1 (Docket # 191) (*Pl.'s Mot.*). Subsequently, the parties agreed that he returned to work at Cianbro on February 20, 2007, obviating his demand for ongoing damages.

*Opp'n to Pl.'s Mot. for Limited Recons.* at 2 (Docket #198) (*Def.'s Opp'n*); *Pl.'s Reply to Def.'s Opp'n* at 1 n.1 (Docket # 199) (*Pl.'s Reply*). In essence, Mr. Harding argues that he has been uncompensated between August 22, 2006 – the date the jury returned its verdict – and February 20, 2007 – the date he returned to work.[4] *Pl.'s Mot. for Limited Recons.* at 1 (Docket # 191) (*Pl.'s Mot.*).

## II. DISCUSSION

### A. A Pro Rata Award Consistent With the Verdict

Mr. Harding has made a compelling point. Under the current division between the roles of the jury and the court in fashioning remedies for victims of discrimination, there will occasionally be a significant delay between the verdict and judgment. Here, following the verdict, and by consent of the parties, the Court considered issues of front pay and reinstatement after receiving written argument of counsel. A hiatus between the verdict and judgment was inevitable. As the jury found Mr. Harding to be entitled to back pay up to the date of the verdict and the Court found him entitled to reinstatement, it logically follows that he is also entitled to lost wages from the verdict to his reinstatement.

This sensible conclusion – virtually compelled by the evidence and the verdict – is consistent with case law. Although the First Circuit has not specifically addressed the issue, the Second Circuit provides guidance in *Banks v. Travelers Companies*:

---

[4] Mr. Harding's motion for reconsideration states:

> [B]ecause Plaintiff has suffered a significant reduction in earnings for the period from the culmination of trial through the present, yet has received back pay compensation only for the period ending with the jury verdict on August 22, 2006, limited front and/or back pay is warranted from that date until Plaintiff is reinstated to bring the Plaintiff to the position which he would have had but for the illegal discharge.

*Pl.'s Mot.* at 4.

> In calculating its back pay award, the jury will obviously not be able to anticipate the date on which judgment will enter. Accordingly, any lag time between the jury's verdict and the district court's ultimate judgment ordinarily should be remedied by the court, in the form of a pro rata increase of the back pay award.

180 F.3d 358, 364 (2d Cir. 1999). This conclusion is consistent with the court's obligation, imposed by Congress and recognized by the United States Supreme Court, to make the employee whole. *See* 42 U.S.C. § 12117; 42 U.S.C. § 2000e-5(g)(1); *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 850 (2001); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975); *Johnson v. Spencer Press of Me., Inc.*, 364 F.3d 368, 379 (1st Cir. 2004).[5]

Under the Seventh Amendment, the Court is bound by the jury's decision on all issues common to the requests for legal and equitable relief. *See Harding*, 473 F. Supp. 2d at 95. Here, the jury verdict is consistent with a finding that Mr. Harding was disabled at least from the date of discharge to the date of the verdict and that he was entitled to back pay during that interval.[6] Absent evidence – and there is none – that from August 22, 2006 to February 20, 2007, Mr. Harding physically recovered or earned post-verdict wages higher

---

[5] It is also consistent with case law from other circuits. *See Kraszewski v. State Farm Gen. Ins. Co.*, 912 F.2d 1182, 1185 (9th Cir. 1990) (citing the "general rule that back pay should continue to accrue until the date of judgment"); *Nord v. United States Steel Corp.*, 758 F.2d 1462, 1472-73 (11th Cir. 1985) (concluding that a back pay award which ended the back pay period on the date of the court's oral findings over four months before judgment was entered violated the "make whole" provision of Title VII); *Patterson v. Am. Tobacco Co.*, 535 F.2d 257, 269 (4th Cir. 1976) (concluding that a back pay award may extend to the date judgment is entered); *EEOC v. Monarch Machine Tool Co.*, 737 F.2d 1444, 1453 (6th Cir. 1980) ("Generally, where an employer has discriminatorily refused to hire an employee, contrary to that employee's rights under Title VII, an award of back pay will be computed from the date of first refusal until final judgment."); *Trout v. O'Keefe*, 144 F.R.D. 587, 597 (D.C. 1992); *Gonzalez v. Markle Mfg. Co.*, 487 F. Supp. 1088, 1092 (W.D. Tex. 1980) (extending back pay award from the date of the magistrate's decision to date of judgment).

[6] In fact, Cianbro conceded that when he was discharged, Mr. Harding had a disabling condition – fibromyalgia. *See Harding*, 473 F. Supp. 2d at 94. During the trial, Sheldon Wishnick, Mr. Harding's economist, testified that his total economic loss from September 9, 2002 to August 1, 2006 was $563,897.00. *Tr.* at 336:2-25, 337:1-22, 357:17-19. The jury's back pay award of $563,000.00 is generally consistent with Mr. Wishnick's testimony.

than he had been earning up to the time of trial, it would violate the verdict to conclude that he is entitled to no lost wages between August 22, 2006 and February 20, 2007.[7]

### B. Cianbro's Defenses

Cianbro responds that Mr. Harding's request must be denied because: (1) Plaintiff has not identified any extraordinary circumstances justifying reconsideration, (2) Plaintiff's motion is a request for additional back pay which is barred by the jury's verdict, (3) to the extent Plaintiff's motion is improperly deemed to be a request for front pay, the Court should adhere to its earlier decision to deny front pay, and (4) Plaintiff is not entitled to additional back pay or front pay due to his failure to reasonably seek alternative employment and other defects in his damage calculations. *Def.'s Opp'n* at 2.

#### 1. Extraordinary Circumstances

Cianbro first argues that Mr. Harding may not succeed on his motion for reconsideration because he cannot demonstrate either that newly discovered evidence has come to light or that the Court committed a manifest error of law. *Def.'s Opp'n* (citing *Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006)). Cianbro points out that when Mr. Harding moved for equitable relief, he did not request an award of lost wages for the time period after the verdict. *Id.* Nevertheless, since Mr. Harding's entitlement to an award for wages lost during this interval is patent, the denial of any remedy would work a manifest injustice contrary to the congressional directive to make the employee whole. The Court rejects Cianbro's stance that Plaintiff's motion should be denied on these grounds alone.

---

[7] For the period from January 11, 2007 – the date of the entry of judgment – to February 10, 2007 – the date of reinstatement, *Selgas v. American Airlines, Inc.*, 104 F.3d 9, 13 (1st Cir. 1997) provides some authority for the Court to order both front pay and reinstatement, since *Selgas* notes that the remedies are "not mutually exclusive." *Selgas* notes that "[h]ybrid awards combining front pay with other equitable elements, while rare, are not novel." *Id.* at 13.

## 2. A Definitional Conundrum

Cianbro maintains that the distinction between front pay and back pay is critical saying, "where a jury verdict is at issue, the distinction between pre-judgment and postjudgment relief is significant . . . ." *Def.'s Opp'n* at 4. Central to Cianbro's argument is the date judgment was entered for Mr. Harding: January 12, 2007. Cianbro says: "front pay refers to damages for wages from the *date of judgment* to some specified date in the future. In any event, the First Circuit removed all doubt regarding the backpay/frontpay distinction by establishing a clear line of demarcation – the entry of judgment . . . ." *Id*. at 5 (internal citations and punctuation omitted) (emphasis in original). Essentially, Cianbro takes the position that the relief sought is for a period prior to the date of judgment and, therefore, cannot be characterized as anything other than back pay. Moreover, Mr. Harding is bound to the jury's award with regard to back pay damages because he did not move to set aside the verdict. *Id*. Finally, Cianbro claims that additional back pay is something the "Court is without authority to grant." *Id.* at 3. According to Cianbro, then, the Court is not free to alter the amount of back pay awarded by the jury.[8]

It is true that the First Circuit has ruled that "[i]n this circuit, juries are generally entrusted with decisions on back pay when the jurors are already resolving issues of liability and compensatory damages." *Johnson*, 364 F.3d at 379-80. By contrast, awards of front pay are "generally entrusted to the district judge's discretion and are available in a more limited

---

[8] The parties argue over the meaning of various First Circuit cases. In *Selgas*, the First Circuit stated that "front pay is available as an alternative to compensate the plaintiff from the conclusion of trial through the point at which the plaintiff can either return to the employer or obtain comparable employment elsewhere." 104 F.3d at 13. From this, Plaintiff suggests that front pay is available from the end of the trial – August 22, 2006 – to Mr. Harding's reinstatement on February 20, 2007. Meanwhile, Cianbro claims that front pay is available not from the conclusion of trial, but from the entry of judgment – January 12, 2007. *See Scarfo v. Cabletron Sys.*, 54 F.3d 931, 952 (1st Cir. 1995) ("Front pay refers to damages for wages from the date of judgment to some specified date in the future."); *Johnson v. Spencer Press of Me., Inc.*, 364 F.3d 368, 379 (1st Cir. 2004) ("An award of back pay compensates plaintiffs for lost wages and benefits between the time of the discharge and the trial court judgment.").

set of circumstances than back pay." *Id.* at 380. The definitional distinctions between back pay and front pay, however, are not as precise as Cianbro would have them be. In *Johnson*, the First Circuit refers to back pay as compensating the plaintiff "for lost wages and benefits between the time of the discharge and the trial court *judgment*" and front pay as being "for lost compensation during the period between *judgment* and reinstatement. . . ." *Id.* at 379 (emphasis added). In the very next sentence, the First Circuit states that "[f]ront pay thus compensates plaintiffs for lost wages that may accrue after the conclusion of the *trial*." *Id. Johnson* leaves open the possibility that there may be a gap between the verdict and the judgment and Cianbro seeks to exploit that gap.

If Cianbro's argument held, courts would become hopelessly entangled in definitional subtleties at the expense of their overriding obligation to make the employee whole. The procedure the parties used here – setting aside the resolution of the front pay and reinstatement issues until after the verdict – makes eminent good sense. It allows counsel to concentrate their energies on the case before the jury and to defer arguments on front pay and/or reinstatement, depending on the verdict.[9] If the jury concludes there is no liability or its verdict signals a finite award of back pay, the front pay issue need not be addressed. On the other hand, if the verdict requires resolution of front pay and reinstatement issues, the parties can marshal their arguments, and the court can consider its decision, in the dispassionate light of time. Cianbro's position would require the court to adopt one of a number of awkward and unsatisfactory alternatives: (1) rule on front pay immediately following the verdict, something contrary to Cianbro's own proposal; (2) force the jury to guess how long the court will take to resolve the front pay issue and award back pay into the

---

[9] Here, the parties recognized the hybrid nature of Mr. Harding's claim for back pay and front pay: when the economist testified concerning front pay, the Court excused the jury, with the consent of both parties. *Tr.* at 389-417.

6

future, a most impractical contradiction in terms; or, (3) leave an employee uncompensated for lost wages between the time of the verdict and the entry of judgment, a result flatly contrary to congressional intent and judicial precedent.[10]

It seems plain that the Court has the authority to order recovery for the period that the jury could not anticipate, whether the award is characterized as back pay or front pay. If the award is technically back pay, since it precedes the entry of judgment, the Court has authority to grant relief under the logic in *Banks*. If the award is technically front pay, the Court has the authority to grant relief under *Johnson*. Here, the Court will pro-rate award to compensate Mr. Harding for the wages he lost between August 22, 2006 and February 20, 2007.

### 3. The Characterization of the Relief as Front Pay

Alternatively, Cianbro argues that if Mr. Harding's motion is treated as requesting reconsideration of the Court's denial of front pay, the Court should adhere to its original decision.[11] The Court does not consider whether to award lost wages between August 22, 2006 and February 20, 2007 resolved by its order dated January 11, 2007.

### 4. Plaintiff's Alleged Failure to Mitigate his Damages

Finally, Cianbro argues that Mr. Harding's motion must be denied because it is unsupported by the evidence. Cianbro returns to the argument it made in its motion for remittitur (Docket # 189), and claims that "Plaintiff failed to make reasonable mitigation efforts . . . ." *Def.'s Opp'n* at 7. The Court addressed this issue in its Order on Defendant's

---

[10] Immediately after the verdict, the Court asked counsel how they wished to proceed on front pay. *Tr.* at 1216:5-25, 1217:1-13. Counsel for Mr. Harding and for Cianbro asked for some time to consult and get back to the Court. The Court allowed them time to do so. Ultimately, upon agreement of counsel, Mr. Harding filed a motion for equitable relief and submitted memoranda pursuant to a briefing schedule.

[11] Putting aside the merits, the Court notes that the very purpose of a motion for reconsideration is for a court to reconsider its previous decision; a cursory argument that a motion for reconsideration must be denied solely because it involves an issue the court has already decided would plainly be unpersuasive.

motion for remittitur and will not revisit the discussion here. Suffice it to say, there was ample evidence for a jury determination that Mr. Harding had taken adequate steps to mitigate his damages.

### C. Computation of Back Pay / Front Pay Award

Mr. Harding calculates the total loss to equal $59,350.58 to the date of his motion, January 29, 2007 and requests an additional weekly award of $1,565.02 to the date of reinstatement. The Court arrives at a similar, but slightly lower figure. To compute the amount of the additional award to Mr. Harding from the date of the verdict to the date of reinstatement, the Court is guided first by the jury verdict, which substantially adopted the loss figures calculated by Mr. Wishnick, the Plaintiff's expert. Mr. Wishnick's report sets forth the cumulative loss from August 1, 2006 through the end of the calendar year.[12] *Pl.'s Ex.* 31 at 7. The figure is $45,093.00. This figure, however, must be reduced to eliminate the twenty-one days preceding the jury verdict on August 22, 2006.[13] The per diem figure for $45,093.00 is $294.73 ($45,093.00 ÷ 153 days = $294.73). Multiplied by twenty-one the result is $6,189.33 ($294.73 x 21 days = $6,189.33). The net figure for 2006 is $38,903.67 ($45,093.00 - $6,189.33 = $38,903.67).

Mr. Wishnick also calculated the cumulative loss for the year 2007 to total $130,963.00. The per diem rate is $358.80 ($130,963.00 ÷ 365 = $358.80). Calculated through February 19, 2007, the date before Mr. Harding returned to work, the total is

---

[12] Attached to his motion for reconsideration, Mr. Harding provided his actual earnings after trial through January 31, 2007. *Aff. of Ronald Harding* (Docket # 193). It turned out he actually earned $80.00 less than Mr. Wishnick projected through the end of the calendar year 2006. *See Pl.'s Mot.* at 5 n.5. Mr. Harding calculates that during the month of January, 2007, he had earned slightly more – approximately $69.00 – than he had been projected to earn. *Id.* at n.6. Whatever the cumulative difference between projected and actual earnings from August 22, 2006 and February 20, 1007, it is so close that it is *de minimis*.

[13] Mr. Wishnick's figures appear to have been calculated through August 1, 2006, the so-called "date of determination." The per diem figure is calculated on the 153 days from August 1, 2006 through December 31, 2006.

$17,940.00 ($358.80 x 50 days = $17,940.00). The total amount of the additional back pay and front pay award to Mr. Harding is $56,843.67 ($38,903.67 + 17,940.00 = $56,843.67). The Court's judgment shall be amended to reflect this additional award.

### III.  CONCLUSION

The Court GRANTS Plaintiff's Motion for Reconsideration (Docket # 191) and ORDERS the Judgment dated January 12, 2007 amended to reflect an additional award for Plaintiff Ronald Harding and against Cianbro Corporation in the amount of $56,843.67.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of May, 2007